UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

PAUL TOOLY,

                                        Plaintiff,

      -v-                                           7:13-CV-1575
                                                    (DNH/ATB)
STATE UNIVERSITY OF NEW YORK AT
POTSDAM; JOHN F. SCHWALLER;
MARY DOLAN,

                                        Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                              OF COUNSEL:

LEVINE, BLIT LAW FIRM                     LEWIS G. SPICER, ESQ.
Attorney for the Plaintiff
499 South Warren Street, Suite 500B
Syracuse, New York 13202

HON. ERIC T. SCHNEIDERMAN                 DAVID FRUCHTER, ESQ.
Attorney General for the State of New York   WILLIAM A. SCOTT, ESQ.
Attorneys for the Defendants
 The Capitol
Albany, New York 12224

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I.    INTRODUCTION

      On December 23, 2013, plaintiff Paul Tooly ("plaintiff" or "Tooly") filed this action against

defendants State University of New York at Potsdam ("SUNY Potsdam"), John Schwaller

("Schwaller") and Mary Dolan ("Dolan", and together with SUNY Potsdam and Schwaller, the

"defendants").  Plaintiff's amended complaint (the "Amended Complaint") asserts four causes of

action including: (i) deprivation of due process rights pursuant to 42 U.S.C. § 1983, (ii) denial of

due process in violation of the Equal Protection Clause of the Fourteenth Amendment, (iii) disability discrimination in violation of the New York State Human Rights Law ("Human Rights Law") and (iv) retaliation in violation of the New York State Human Rights Law.  See Amended Complaint.  Plaintiff seeks compensatory and punitive damages, along with injunctive relief.  Defendants have filed an answer, and the parties have completed extensive discovery.

Currently pending is defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(a).  The motion has been fully briefed and oral arguments were heard on January 13, 2017 in Utica, New York.

## II.   FACTUAL BACKGROUND

The following facts, taken from the Amended Complaint and the parties' statements pursuant to Northern District of New York Local Civil Rule 7.1(3), are undisputed unless otherwise indicated.  Consideration has been given to whether the parties have proffered admissible evidence in support of their positions and the facts are viewed in the light most favorable to the nonmoving plaintiff.

Tooly began his employment at SUNY Potsdam in February 2000 as a Motor Vehicle Operator.  See Plaintiff's Rule 7.1 Statement ("Pl.'s Stat."), at ¶¶ 1, 3.  On May 11, 2011, events relative to this case occurred but the parties diverge about what occurred.  Defendants contend that plaintiff walked off the job without explanation.  See Defendants' Rule 7.1 Statement ("Defs.' Stat."), at ¶ 4.  Plaintiff asserts that he was concerned about the actions of another SUNY Potsdam employee, Lee Smith ("Smith"), whom plaintiff alleges was aggressive towards him, other employees and students.  During the afternoon of May 11, 2011, plaintiff stopped at the Human Resources Office of SUNY Potsdam and asked to see defendant Dolan, who at the time was the Director of Human Resources.  See Pl's Stat., at ¶ 5.  While Dolan was unavailable at

that time, a telephone call occurred that afternoon between plaintiff, Dolan and plaintiff's direct supervisor.  As a result of that telephone call, plaintiff was approved vacation leave for his next four work days, May 12th, 13th, 16th and 17th.  Id. at  ¶ 6.

On May 13, 2011, an employee of SUNY Potsdam, Melissa Proulx, wrote to the New York State Department of Civil Service Employee Health Service ("EHS") requesting that Tooly undergo a medical examination pursuant to New York State Civil Service Law ("Civil Service Law") § 72(1) in order to determine whether plaintiff was fit to perform his duties, citing plaintiff's alleged history of erratic behavior and mental instability.  See Declaration of May Dolan ("Dolan Decl."), Ex. A.  A copy of the May 13th letter was not sent to plaintiff.  On May 17, 2011, defendant Schwaller, then president of SUNY Potsdam, notified plaintiff by letter that he was being placed on involuntary leave of absence, effective May 18, 2011, and was directed to undergo a medical examination by EHS pursuant to Civil Service Law.  See Dolan Decl., Ex. B. By letter dated May 24, 2011, Dolan notified plaintiff to appear for the medical examination on June 6, 2011.  See Dolan Decl. Ex. C.

Prior to the scheduled June 6, 2011 medical examination, Tooly wrote to Schwaller requesting information concerning his involuntary leave and the medical examination request. See Dolan Decl., Ex. D.  Plaintiff failed to attend the June 6, 2011 medical examination.  On June 7, 2011, Schwaller denied plaintiff's request for a written statement as to why the medical examination was ordered.  See Dolan Decl., Ex. E.  The medical examination was rescheduled to June 27, 2011 with written notice being provided to plaintiff, however, plaintiff again failed to attend.  See Pl.'s Stat. at ¶ 14.

After numerous postponements at Tooly's request, an interrogation meeting was scheduled at SUNY Potsdam on July 18, 2011 to address plaintiff's May 11, 2011 actions and

failure to appear at the June 6, 2011 and June 27, 2011 medical examinations. Id. at ¶ 23. Plaintiff failed to appear at the July 18, 2011 meeting. As a result, a Notice of Discipline and an accompanying Statement of Charges were sent to plaintiff indicating that his employment was terminated as of July 18, 2011. See Dolan Decl., Ex. O. On August 8, 2011, plaintiff's termination was withdrawn and a new Notice of Discipline was issued. Id. at Ex. P. On that same day, Dolan sent plaintiff a letter stating that plaintiff was suspended without pay effective August 8, 2011. It does not appear that any action was ever taken concerning the August 8, 2011 Notice of Discipline.

On or about November 15, 2012, SUNY Potsdam learned that another employee had reported that Tooly was engaging in harassing behavior toward him. Plaintiff was then directed to report to the Human Resources Office on December 10, 2012. After numerous postponements, plaintiff failed to attend an interrogation meeting on January 3, 2013. The parties agree that plaintiff has not worked for, nor received a paycheck from, SUNY Potsdam since April or May 2011. Further, plaintiff's personal goods were returned to him in August 2011.

### III.    LEGAL STANDARDS

Summary judgment is appropriate where, construing the evidence in the light most favorable to the non-moving party, "there is no genuine issue as to any material fact" and that the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c); Richardson v. Selky, 5 F.3d 616, 621 (2d Cir. 1993). "The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish her right to judgment as a matter of law." Bowen v. National R.R. Passenger Corp., 363 F. Supp. 2d 370, 373 (N.D.N.Y. 2005) (citing Rodriquez v. City of New York, 72 F.3d 1051, 1060-61 (2d Cir. 1995)).

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). "[A] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [their] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'" Id. (quoting First Nat'l Bank of Ariz. v. Cities Svcs.Co., 391 U.S. 253, 288 (1968)).  Those specific facts must be supported by "citing to particular parts of materials in the record." FED. R. CIV. P. 56(c)(1)(A).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted).  Affidavits submitted to defeat summary judgment must be admissible themselves or must contain evidence that will be presented in an admissible form at trial.  See H. Sand & Co. v. Airtemp Corp., 934 F.2d 450, 454–55 (2d Cir.1991) (stating that "hearsay testimony . . . that would not be admissible if testified to at the trial may not properly be set forth in [a Rule 56] affidavit.").

## IV.    DISCUSSION

### (a) SUNY Potsdam Is Entitled to Eleventh Amendment Immunity.

SUNY Potsdam argues that both of Tooly's federal claims against it must fail as such claims are barred by the Eleventh Amendment.  Plaintiff contends that any potential Eleventh Amendment defense has been waived by SUNY Potsdam as a result of its participation in this case.

It is well settled that the Eleventh Amendment bars suits against states and state agencies. See Pennhurst State Sch. and Hosp. v. Halderman, 465 U.S. 89, 100-02 (1984). The protection from suit provided by the Eleventh Amendment extends to legal and equitable relief.

See Papasan v. Allain, 478 U.S. 265, 276 (1986).  The Second Circuit has held that for Eleventh Amendment purposes, the State University of New York ("SUNY") is an integral part of the state government such that when it is sued, the State of New York is the real party.  See Dube v. State Univ. of N.Y., 900 F.2d 587, 594 (2d Cir.1990).  Further, the Second Circuit recognizes that "SUNY has clearly not consented to suit in a federal forum."  Id.

However, a state's Eleventh Amendment immunity may be abrogated by Congress or waived by the state's own conduct.  See Seminole Tribe of Florida v. Florida, 517 U.S. 44, 55 (1996).  "Congress may abrogate the States' constitutionally secured immunity from suit in federal court only by making its intention unmistakably clear in the language of the statute." Atascadero State Hospital v. Scanlon, 473 U.S. 234, 242 (1985); Santiago v. New York State Dep't of Corr. Servs., 945 F.2d 25, 29 (2d Cir. 1991).  The Second Circuit has found that neither a procedural due process claim pursuant to § 1983 nor an equal protection claim under the Fourteen Amendment is sufficient to abrogate a state's Eleventh Amendment immunity. Santiago, 945 F.2d at 30-32; Marino v. City Univ. of New York, 18 F. Supp. 3d 320, 329 (E.D.N.Y. 2014); Garcia v. Paylock, 2014 WL 298593, at *3 (E.D.N.Y. Jan. 28, 2014).

A state may also waive its  defense of Eleventh Amendment immunity by appearing in federal court without objection and defending on the merits in a case over which the Court otherwise has original jurisdiction.  See Ku v. Tennessee, 322 F3d 431, 435 (6th Cir. 2003). However, SUNY Potsdam specifically raised its defense of Eleventh Amendment immunity in its Answer to the Amended Complaint and, as it did not file a motion to dismiss pursuant to Federal rule of Civil Procedure 12(b), has raised such immunity in its first dispositive motion.  See Answer, at 4-5.  Unlike the cases cited by plaintiff wherein the state failed to raise its Eleventh Amendment immunity in its Answer, failed to raise it in its motion to dismiss or voluntarily

removed the case to federal court, SUNY Potsdam has taken no substantive action which could be taken as a waiver of it Eleventh Amendment immunity.  Therefore, SUNY Potsdam has properly raised and maintained its Eleventh Amendment immunity against the federal claims brought against it and such claims will be dismissed.

The Eleventh Amendment also prohibits a federal court from granting any relief, prospective or retroactive, against a state or state agency based on state law.  See Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 106 (1984). Furthermore, as the Court made clear in Pennhurst: "[N]either pendant jurisdiction nor any other basis of jurisdiction may override the Eleventh Amendment."  465 U.S. at 121. Therefore, Tooly's state law claims against SUNY Potsdam under the New York State Human Right Law must also be dismissed.

A state official, however, may be sued in his official capacity in a federal forum to enjoin conduct that violates the federal Constitution, notwithstanding the Eleventh Amendment bar. See Papasan, 478 U.S. at 276-77.  He or she may also be sued in his individual capacity for damages as well as injunctive relief for engaging in illegal conduct beyond his or her authority. Id. at 278 n. 11.  As a result, Eleventh Amendment immunity will not similarly shield defendants Schwaller or Dolan from further consideration.

*(b) The Claims Against Defendant Dolan Are Untimely.*

Defendants assert that all of Tooly's claims against Dolan are time barred.

Section 1983 itself does not provide a statute of limitations.  See 42 U.S.C. § 1983; Hogan v. Fischer, 738 F.3d 509, 517 (2d Cir. 2013).  "Thus, the courts apply the statute of limitations for personal injury actions under state law." Hogan, 738 F.3d at 517 (citing Pearl v. City of Long Beach, 296 F.3d 76, 79 (2d Cir. 2012)).  For section 1983 actions filed in New York, the applicable statue of limitations is section 214 of New York's Civil Practice Law and Rules ("CPLR"), which allows three years.  See id.; Harris v. City of New York, 186 F.3d 243, 247-48

(2d Cir. 1999). Similarly, the statute of limitations for actions brought pursuant to New York State Human Rights Law is also three years. See Jones v. State of New York, 149 A.D.2d 470, 471 (2d Dept. 1989); Murphy v. American Home Prod. Corp., 58 N.Y.2d 293, 307 (1983).

The initial complaint was filed by Tooly on December 23, 2013 and did not name Dolan as a defendant. Dolan was only named as a defendant in the Amended Complaint, which was filed on September 15, 2014. See Amended Complaint. Dolan contends that all of plaintiff's claims against her are based upon alleged actions taken prior to September 15, 2011, the date three years prior to the filing of the Amended Complaint

Tooly argues that as Dolan knew or should have known of her involvement in the matter at the time of the initial filing of the Complaint against SUNY Potsdam and Schwaller and therefore, the Amended Complaint should relate back to the date of the original pleading.

Federal Rule of Civil Procedure 15(c)(1)(C) states in pertinent part, that "an amendment to a pleading relates back to the date of the original pleading when . . . the amendment changes the party or the naming of the party against whom a claim is asserted," if, among other things, the defendant "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." FED. R. CIV. P. 15(c)(1)(C). "By its express language, the relation-back language of Rule 15(c)(1)(C) applies to an amendment that 'changes' a named party due to a mistake concerning the proper party's identity, not to a situation where an entirely new party is being added." Briggs v. County of Monroe, 215 F. Supp. 3d 213, 217 (W.D.N.Y. 2016). Rule 15 permits a plaintiff to substitute a proper party for an erroneously named party, but does not permit "the addition of a new party when all of the parties previously named were themselves proper parties." In re Vitamin C Antitrust Litigation, 995 F. Supp. 2d 125, 129 (E.D.N.Y. 2014); see also Pikos v. Liberty Maint., Inc., 2015 WL 6830670, at *3 (E.D.N.Y. Nov. 6, 2015).

While Tooly mentioned Dolan's role in the alleged adverse actions against him in his initial complaint, he chose not to name her as a defendant at that time. See Complaint, at 4. With the filing of the Amended Complaint, plaintiff only added Dolan as a defendant. As a result, there was no mistake regarding the identity of Dolan which would permit plaintiff to utilize Rule 15's relation back doctrine to escape his statute of limitations problem.

Tooly further argues that the claims against Dolan are timely as she participated in the disciplinary action taken against him in late 2012 and early 2013. However, plaintiff has failed to present any evidence to substantiate this position. The letters sent to plaintiff dated November 30, 2012, December 7, 2012, December 14, 2012 and January 3, 2013 were each sent by Melissa Proulx, assistant director of Human Resources and it does not appear that Dolan had any personal involvement in such discipline.

For the reasons discussed, the claims brought against defendant Dolan are untimely and the such claims will be dismissed from this case.

(c) *42 U.S.C. § 1983 Due Process Claim*.

Defendants argue that Tooly has failed to elicit credible evidence to support his procedural due process claim. Defendants allege that Tooly was afforded adequate due process and that his action is premised upon alleged violations of state law which cannot support a claim under Section 1983.

Section 1983 of Title 42 provides that "every person who, under color of [state law] subjects . . . any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the [United States] Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. The Due Process Clause of the Fourteenth Amendment requires that, generally, a person must be afforded the opportunity for a hearing prior to being deprived

of a constitutionally protected property or liberty interest.  See Bd. of Regents v. Roth, 408 U.S. 564, 569-70 (1972).

First, defendants argue that Tooly's first cause of action is premised upon alleged violations of New York State Civil Service Law and, therefore, it is insufficient to state a claim under Section 1983 as liability under Section 1983 "must be based on a violation of federal constitutional or statutory law, not state law." P.C. v. McLaughlin, 913 F.2d 1033, 1045 (2d Cir. 1990).  Such argument is misguided.  It is correct that 42 U.S.C. 1983 does not in and of itself provide plaintiff with a viable federal claim.  Section 1983 provides a mechanism for enforcing a right or benefit established elsewhere.  See Oklahoma City v. Tuttle, 471 U.S. 808, 816 (1985). However, a clear reading of the Amended Complaint demonstrates that plaintiff is alleging that the actions of the defendants deprived him of his due process rights secured by the Fourteenth Amendment.  Plaintiff contends that defendants alleged failure to comply with Civil Service Law or their significant departure from the procedures required by Civil Service Law evidence that he did not receive due process consistent with the Fourteenth Amendment.  It is true that the failure to comply with all or any requirements of New York State Civil Service Law may not *per se* result in a violation of the due process clause of the Fourteenth Amendment.  See Cole v. Erie County, 629 Fed. Appx. 41, 42 (2d Cir. 2015) ("[T]he question in a § 1983 suit claiming deprivation of a property interest without due process is not whether state procedural law was correctly followed or applied, but whether the process actually provided satisfies the requirements imposed by the Constitution."); Ciambriello v. County of Nassau, 292 F.3d 307, 319 (2d Cir. 2002) ("The Constitution, not state law sources . . determines what process is due.").  However, such potential failures or departures are certainly relevant to determining whether plaintiff was afforded the due process required by the Constitution.

Courts "examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." Ky. Dept. of Corr. v. Thompson, 490 U.S. 454 (1989). A person's interest in his or her good reputation alone, apart from a more tangible interest, is not a liberty or property interest sufficient to invoke the procedural protections of the Due Process Clause or create a cause of action under § 1983. See Paul v. Davis, 424 U.S. 693, 701 (1976); Morris v. Lindau, 196 F.3d 102, 114 (2d Cir.1999); Roth, 408 U.S. at 572–73; Valmonte v. Bane, 18 F.3d 992, 999 (2d Cir.1994). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Roth, 408 U.S. at 577.

Tooly's claims are premised on a theory that he holds a constitutionally protected property interest in his continued employment as a result of being a union employee in the State of New York. A plaintiff has a property interest if she can "demonstrate that state law confers 'a legitimate claim of entitlement' " to a benefit. Velez v. Levy, 401 F.3d 75, 85 (2d Cir. 2005). "It is well settled that ... a public employee who can be discharged only for cause[ ] ha[s] a constitutionally protected property interest." DeMichele v. Greenburgh Cent. Sch. Dist., 167 F.3d 784, 789 (2d Cir.1999); see also Laurido v. Simon, 489 F. Supp. 1169, 1177 (S.D.N.Y. 1980) (the placement of a permanent civil service employee on an involuntary leave of absence implicates property interests protected under the due process clause.). Therefore, in light of the fact that Tooly could only be removed from his public employee position in the case of misconduct or for cause pursuant to New York State Civil Service Law, plaintiff has a legitimate claim of entitlement to his position.

Given such finding, it is necessary to determine if Tooly was afforded sufficient due process. "[O]rdinarily, procedural due process requires notice and an opportunity to be heard." Strong v. Bd. of Educ. of Uniondale Union Free Sch. Dist., 902 F.2d 208, 212 (2d Cir.1990). While "[t]he pretermination process need not be elaborate or approach the level of a full adversarial evidentiary hearing, [it] does require that before being terminated such an employee [be given] oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." Otero v. Bridgeport Hous. Auth., 297 F.3d 142, 151 (2d Cir. 2002).

Tooly alleges that the defendants failed to provide the basis for his involuntary leave and for requiring the mental examination as required by New York State Civil Service Law § 72. While plaintiff certainly did himself no favors by refusing to participate in the disciplinary process, the perplexing manner whereby defendants acted in administering disciplinary action against plaintiff is certainly troubling.

New York Civil Service Law § 72, which governs the process to obtain a medical examination, provides that "written notice of the facts providing the basis for the judgment of the appointing authority that the employee is not fit to perform the duties of his or her position shall be provided to the employee and the civil service department . . . prior to the conduct of the medical examination." NY CIV. SER. § 72(1). Section 72(5) also provides that if "there is probable cause to believe that the continued presence of the employee on the job represents a potential danger to persons or property or would severely interfere with operations, it may place such employee on involuntary leave of absence immediately." NY CIV. SER. § 72(5).

The May 13, 2011 letter from SUNY Potsdam to the EHS details four incidents involving Tooly dating back to 2000 to justify their request for a medical examination, including that Tooly interrupting a private meeting of the SUNY Potsdam President to deliver a letter, driving erratically towards two employees, acting unusual in submitting an accident report and the May

10, 2011 incident where he allegedly was agitated, not speaking clearly, repeating himself and where he walked off the job unexpectedly.  <u>See</u> Dolan Decl., Ex. B.  However, a copy of this letter was never provided to plaintiff.  Further, when plaintiff  specifically requested such information in writing on June 3, 2011, his request was denied by defendant Schwaller without articulating a specific reason for such denial.  <u>See</u> Dolan Decl., Ex. D, Ex. E.  A reasonable fact finder could certainly find that defendant Schwaller failed to meet the requirements of Civil Service Law § 72(1) and therefore, plaintiff was justified in failing to participate in the scheduled medical examinations.  The problems associated with defendant Schwaller use of process continued from there.

In order to take disciplinary action against an eligible employee, New York Civil Service Law also provides that the employee "shall have written notice thereof and of the reasons thereof, shall be furnished a copy of the charges preferred against him and shall be allowed at least eight days for answering the same in writing."  NY CIV. SER. § 75(2).  The hearing upon such charges shall be held by an officer having the power to remove the person charged, a record of such hearing is to be made and the burden of proving misconduct is on the person alleging the misconduct.  <u>Id</u>.  Further, Section 75(3) permits the employer to suspend the charged employee without pay "for a period not exceeding thirty days" pending the hearing and a determination of charges of misconduct.  NY CIV. SER. § 75(3).

The June 30, 2011 letter from Dolan to Tooly requesting that he report to a July 6, 2011 disciplinary meeting states that plaintiff "may have committed acts for which formal disciplinary action may be initiated against you" but does not state what the acts were, which at this point included missing the scheduled medical examinations.  The July 18, 2011 Notice of Discipline from Schwaller to plaintiff was the first point at which plaintiff was notified specifically what the charges against him were.  Although the letter states that the proposed penalty of termination "will take effect fourteen (14) calendar days from the date" plaintiff received the Notice of

Discipline, plaintiff was actually terminated by Schwaller on that same day. See Dolan Decl., Ex. O.  Although the Notice permits plaintiff to grieve the Notice of Discipline, no hearing pursuant to Civil Service Law § 75 was scheduled or held prior to plaintiff's termination on July 18, 2011. A reasonable finder of fact could conclude that the proposed July 6, 2011 meeting was insufficient for purposes of Civil Service Law § 75 as plaintiff was not informed of the charges against him.  Further, the termination which occurred on July 18, 2011 appears to have been not only inconsistent with the timeline set out in the Notice of Discipline, but the requirements provided in Civil Service Law § 75.

Seemingly as a result of these problems and inconsistencies, Tooly's July 18, 2011 termination was withdrawn pursuant to an August 8, 2011 letter from Dolan, which Dolan states resulted from legal counsel advising that "the most appropriate personnel action regarding plaintiff pending a determination of the disciplinary charges was suspension without pay rather than termination." Dolan Decl., at ¶ 32.  The August 8, 2011 Notice of Discipline again states SUNY Potsdam sought termination of plaintiff and that the proposed penalty will take effect fourteen calendar days after receipt by plaintiff.  See Dolan Decl., Ex. P.  However, no hearing was ever scheduled or held and plaintiff was  suspended from work without pay as of August 8, 2011.

Defendants now take the position Tooly was never terminated pursuant to the August 8, 2011 Notice of Discipline and still remains suspended without pay even though he has not worked at SUNY Potsdam since May 2011 and his possessions were returned in August 2011. This position again runs counter to the language of their own August 8, 2011 Notice of Discipline which indicates that plaintiff would be terminated 14 days after receipt.  It also runs counter to the language of Civil Service Law 75(3), which permits suspension without pay for a period not to exceed 30 days so that a hearing may be held, not an indefinite period of over 6 years.

Given the perplexing manner in which discipline was imposed upon Tooly and the apparent departures from New York Civil Service Law, it is a material question of fact for a jury to determine whether Tooly was afforded adequate due process to satisfy his Fourteenth Amendment rights.  As a result, defendants' motion for summary judgment seeking to dismiss plaintiff's procedural due process claim against Schwaller will be denied.

Alternatively, Schwaller contends that he is entitled to qualified immunity.

Once qualified immunity is pleaded, plaintiff's complaint will be dismissed unless defendant's alleged conduct, when committed, violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Williams v. Smith, 781 F.2d 319, 322 (2d Cir. 1986) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 815 (1982).  "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987); Brown v. D'Amico, 35 F.3d 97 (2d Cir. 1994).  Officials are entitle to qualified immunity "if (1) their conduct does not violate clearly established constitutional rights, or (2) it was objectively reasonable for them to believe their acts did not violate those rights." Weyant v. Okst, 101 F.3d 845 (2d Cir. 1996).

As a reasonable juror could conclude that Schwaller's failure to follow the clear requirements of New York Civil Service Law would lead to the deprivation of Tooly's procedural due process rights under the Fourteenth Amendment, such actions would violate clearly established constitutional rights and it would not be objectively reasonable to believe their acts did not violate plaintiff's rights.  Therefore, Schwaller is not entitled to a qualified immunity defense.

### (d) *Equal Protection Claim*.

The Amended Complaint lists Tooly's second cause of action as "denial of due process in violation of the Equal Protection Clause of the 14th Amendment."

The Equal Protection Clause "requires that the government treat all similarly situated people alike." See Harlen Assocs. v. Inc. Vill. of Mineola, 273 F.3d 494, 499 (2d Cir.2001); Latrieste Rest. v. Vill. of Port Chester, 188 F.3d 65, 69 (2d Cir.1999) (The Equal Protection Clause is "essentially a direction that all persons similarly situated be treated alike"). An individual not alleging invidious discrimination on the basis of membership in some group may nevertheless prevail on an equal protection claim under the "class of one" theory recognized by the Supreme Court in Willowbrook v. Olech, 528 U.S. 562 (2000). Under a "class of one" equal protection claim, a plaintiff must show that (1) "[he] has been intentionally treated differently from others similarly situated and" (2) "there is no rational basis for the difference in treatment." See Olech, 528 U.S. at 564; see also Giordano v. City of New York, 274 F.3d 740, 743 (2d Cir. 2000).

Tooly has not met this standard. To support his claim, plaintiff was required to demonstrate that he was treated differently from other employees who were similarly situated to him in all material respects. Plaintiff argues that defendants denied him equal protection by failing to provide him with a written explanation of the reasons underlying his medical examination pursuant to Civil Service Law § 72, pursuing disciplinary charges against him for his failure to participate and ultimately terminating him. However, plaintiff offers no comparison to any similarly situated employees who have been treated differently from him. Accordingly, plaintiff's equal protection claim fails. Thus, defendants' motion for for summary judgment will be granted concerning the second cause of action.

*(e) Disability Discrimination.*

Defendants contend that Tooly's third cause of action, alleging disability discrimination pursuant to the New York State Human Rights Law, should be dismissed as defendants did not perceive plaintiff as having a mental disability.

Courts in this Circuit analyze the merits of a Human Rights Law employment discrimination claims using the burden-shifting framework articulated in McDonnell Douglas Corp.

v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). See Spiegel v. Schulmann, 604 F.3d 72, 80 (2d Cir.2010); Bermudez v. City of New York, 783 F. Supp. 2d 560, 576 (S.D.N.Y.2011). Under this test, a plaintiff is required first to establish a *prima facie* case of discrimination by showing that: (i) he was part of a protected class; (ii) he was competent to perform the job in question or was performing his job duties satisfactorily; (iii) he suffered an adverse employment action; and (iv) the adverse action occurred under circumstances giving rise to an inference of discrimination. See Spiegel, 604 F.3d at 80.  The plaintiff's burden in establishing a prima facie case is "de minimis."  Sassaman v. Gamache, 566 F.3d 307, 311–12 (2d Cir. 2009). The burden then shifts to the defendant to provide a legitimate, non-discriminatory basis for its action. See Spiegel, 604 F.3d at 80. If the defendant produces evidence of a legitimate basis for its employment decision, then the burden returns to the plaintiff to "come forward with evidence that the defendant's proffered, nondiscriminatory reason is a mere pretext for actual discrimination." Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir.2000).

The Second Circuit has "repeatedly expressed the need for caution about granting summary judgment to an employer in a discrimination case where ... the merits turn on a dispute as to the employer's intent." Holcomb v. Iona Coll., 521 F.3d 130, 137 (2d Cir. 2008).  Direct documentary evidence of an employer's discriminatory intent will rarely, if ever, be available; as such, "affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir.1994). Nevertheless, if the evidence is "insufficient to permit a reasonable trier of fact to find that [ ] discrimination was the reason" for the adverse employment action at issue, summary judgment is appropriate. James v. N.Y. Racing Ass'n, 233 F.3d 149, 157 (2d Cir. 2000).

Defendants contend that Tooly has failed to make out a *prima facie* case of disability discrimination as he has failed to provide evidence that he was disabled or that defendants

perceive him to be disabled.  Defendants argue that they made no judgments regarding plaintiff's mental capacity and were scheduling the medical examination so that qualified professionals could determine whether plaintiff was mentally fit to perform the duties of his job at SUNY Potsdam.

A disability is defined in Title 42 of the United States Code as "a physical or mental impairment that substantially limits one or more major life activities of such individual."  42 U.S.C. § 12102(1)(A).  An impairment "substantially limits" a major life activity when it "substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population."  29 C.F.R. § 1630.2(j)(ii).  However, "in New York, the term 'disability' is more broadly defined."  New York Div. of Human Rights v. Xerox Corp., 65 N.Y.2d 213,218 (1985).  "Fairly read, the statute covers a range of conditions varying in degree from those involving the loss of a bodily function to those which are merely diagnosable medical anomalies which impair bodily integrity and thus may lead to more serious conditions in the future.  Id.

Further, Human Rights Law extends protection to individuals who have a condition "regarded by others" as a disability.  See N.Y. EXEC. LAW 292(1)(a).  A plaintiff may make out his *prima facie* case by offering evidence tending to show that: (1) he had an impairment that was not substantially limiting, but was treated as though the impairment was substantially limiting; (2) he had an impairment that was substantially limiting only because of the attitudes of others toward the impairment; or (3) that he had no impairment at all, but was regarded by his employer as having a substantially limiting impairment.  See Almond v. Westchester Cnty. Dept. of Corr., 425 F. Supp. 2d 394, 399 (S.D.N.Y. 2006).  Plaintiff must introduce some evidence tending to establish that the defendant thought the perceived impairment would limit plaintiff in their performance.  Id. Consequently, it is plaintiff's burden to identify the impairment defendant

perceived him to suffer from. See Reeves v. Johnson Controls World Servs., Inc., 140 F.3d 144, 154 (2d Cir.1998).

In the May 13, 2011 letter to the New York State Department of Civil Service, defendants requested that Tooly undergo a mental stability evaluation to determine if he was fit to perform his job duties, a major life activity. However, by utilizing New York State Civil Service Law 72(5) to place plaintiff on immediate involuntary leave of absence on May 17, 2011 and requiring plaintiff to undergo a medical examination to assess his mental stability, a reasonable juror could conclude that Schwaller perceived plaintiff to have a qualifying disability. While plaintiff has not provided evidence that he suffers from a qualifying disability, he has sufficiently established that he was regarded by Schwaller as having a substantially limiting impairment.

As a result, Tooly has established a *prima facie* case of disability discrimination pursuant to Human Rights Law. Therefore, defendants may present a legitimate, non-discriminatory reason for plaintiff's suspension and/or termination. While defendants do not directly do so, their submissions make clear that the reason for their adverse action towards plaintiff resulted from their belief that he exhibited erratic behavior which represented a potential danger to persons or property or would severely interfere with operations, culminating in the events of May 11, 2011 when plaintiff allegedly exhibited strange behavior and walked off the job. Defendants have presented credible evidence supporting their proposed non-discriminatory reason such that a reasonable fact finder could agree.

Therefore, the burden shift back to Tooly to identify evidence which demonstrates that defendants' proffered, nondiscriminatory reason is a mere pretext for actual discrimination. Plaintiff has met such burden. A reasonable fact finder could determine that the alleged due process deficiencies previously discussed evidence an intent towards actual discrimination.

Therefore, defendants' motion to summary judgment with regard to plaintiff's disability discrimination will be denied.

    *(e) <u>Retaliation</u>.*

Lastly, defendants assert that Tooly's fourth cause of action, alleging retaliation in violation of New York Human Rights Law, should also be dismissed as there is no evidence of any retaliatory conduct toward plaintiff nor any casual connection between any protected speech and any subsequent adverse employment action.

Regardless of the merits of his principal discrimination claim, New York Human Rights Law also makes it unlawful for employers to "retaliate or discriminate against any person because he or she has opposed any practices forbidden [by Human Rights Law] or because he or she has filed a complaint, testified or assisted in any proceeding [under Human Rights Law]." N.Y. EXEC. LAW 296(7), <u>see also</u> <u>Treglia v. Town of Manlius</u>, 313 F.3d 713, 719 (2d Cir. 2002). To establish a prima facie case of retaliation, plaintiff must show that "(1) his speech or conduct was protected activity; (2) the defendant took an adverse action against him; and (3) there was a causal connection between this adverse action and the protected speech." <u>Matthews v. City of New York</u>, 779 F.3d 167, 172 (2d Cir. 2015). The defendant must also be aware of plaintiff's protected activity at the time of the adverse action. <u>See</u> <u>McMenemy v. City of Rochester</u>, 241 F.3d 279, 282-83 (2d Cir. 2001). As with principal discrimination claims, once a prima facie retaliation case has been established, the burden shift to the defendant who must then assert a non-discriminatory reason for such adverse action. <u>Kessler</u>, 461 F.3d 205-06. Where defendant can do so, the burden then shifts back to the plaintiff to show that the defendants' proffered reason is pretextual. <u>Id</u>.

Tooly asserts that his protected activity consisted of opposing defendants' discriminatory request for a medical examination. However, such activity is not protected. The term "protected

activity" refers to action taken to protest or oppose statutorily prohibited discrimination.  See 42 U.S.C. § 2000e–3; see also, Wimmer v. Suffolk County Police Dep't, 176 F.3d 125, 134–35 (2d Cir. 1999) (discussing scope of statute's "protected activity" provision).  While the law is clear that opposition to a Human Rights Law violation need not rise to the level of a formal complaint in order to receive statutory protection, the notion of "opposition" includes activities such as "making complaints to management, writing critical letters to customers, protesting against discrimination by industry or by society in general, and expressing support of co-workers who have filed formal charges." Sumner v. United States Postal Serv., 899 F.2d 203, 209 (2d Cir.1990).

While Tooly submitted a written request on June 3, 2011 for the facts providing the basis for his medical examination, such letter did not put the defendants on notice that his opposition to the medical examination resulted from possible discrimination.  Therefore, it did not constitute protected activity for retaliation purposes.  As a result, plaintiff has not produced sufficient evidence to defeat defendants' motion for summary judgment and plaintiff's retaliation claim should be dismissed.

## IV. CONCLUSION

For all the foregoing reasons, defendants' motion for summary judgment is granted in part and denied in part.  Summary judgment is granted with respect to Tooly's equal protection claim and retaliation pursuant to New York State Human Rights Law.  Further, defendant SUNY Potsdam will be dismissed from this case due to its Eleventh Amendment immunity and defendant Dolan will be dismissed due to plaintiff's failure to comply with the statute of limitations.  Summary judgment is denied with respect to plaintiff's procedural due process claim brought under 42 U.S.C. § 1983 and his disability discrimination claim brought pursuant to New York State Human Rights Law.

Therefore, it is ORDERED that:

(1) defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 is **GRANTED** in part and **DENIED** in part;

(2) all claims against SUNY Potsdam are **DISMISSED;**

(3) all claims against defendant Mary Dolan are **DISMISSED**;

(4) plaintiff's equal protection claim (2nd Cause of Action) and retaliation claim pursuant to New York Human Rights Law (4th Cause of Action) are **DISMISSED**; and

(5) plaintiff's procedural due process claim pursuant to 42 U.S.C. 1983 (1st Cause of Action) and disability discrimination claim pursuant to New York Human Rights Law (3rd Cause of Action) against defendant John F. Schwaller **REMAIN** and trial is scheduled for **March 19, 2018** in this matter.

IT IS SO ORDERED.

United States District Judge

Dated: October 2, 2017
      Utica, New York